**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BTX INDUSTRIES, INC.,** | : | **Case No. 1:09-CV-02216** |
| **Plaintiff,** | : | |
| | : | **JUDGE KATHLEEN O'MALLEY** |
| **v.** | : | |
| **THE PARTY ANIMAL, INC.,** | : | <u>**MEMORANDUM & ORDER**</u> |
| **Defendant.** | : | |

**MEMORANDUM & ORDER**

On October 29, 2009, Plaintiff BTX Industries, Inc. filed a three-count amended complaint

against Defendant The Party Animal, Inc. ("PA") asserting breach of contract, tortious interference

with contract and related claims.  Shortly thereafter, PA filed a motion to dismiss (Doc. 10) pursuant

to Federal Rule of Civil Procedure 12(b)(6).  BTX has filed a brief in opposition (Doc. 11), and PA

has filed a reply brief (Doc. 12.)  Accordingly, this matter is ripe for adjudication.  For the reasons

discussed below, PA's motion to dismiss is <u>**DENIED**</u>.

I.     **BACKGROUND**

   A.     **THE PARTIES**

BTX is a Delaware corporation involved in the business of international trade, specifically

including the brokering, facilitating, and importing of goods manufactured overseas for resale by its

domestic customers.  (Doc. 9 at ¶5.)  PA is an Ohio corporation involved in the importation and

resale of applique flags and embroidered goods.  (Doc. 9 at ¶7.)

Pursuant to an agreement dated March 2, 2007, BTX became a successor in interest to

Beijing Trade Exchange, Inc. ("BTE") and acquired the assets and business of BTE, including all contractual rights attributable to BTE at the time.  (Doc. 9 at ¶5.)  Based on these acquisitions, BTX obtained the contractual rights BTE had in a November 4, 1997 contract between BTE and PA.  (Doc. 9 at ¶8.)  According to BTX, the agreement prohibited PA from obtaining any goods from BTE's suppliers or employees during the term of the contract and "for the period of two years thereafter." (Doc. 9 at ¶11.)[1]  Due to BTX's subsequent acquisition of BTE, BTX asserts that PA is prohibited from obtaining goods from the suppliers and employees of *BTX* for the same time period. (*Id.*)

In April 2009, BTX learned that PA had breached the 1997 Agreement by obtaining goods from BTX's principal supplier, Linhai Chicheng Arts and Crafts Co., LTD Linhai, d.b.a. Linhai Tianyun Import Export Co., Ltd. ("TZ") through the services of a BTX employee, Luo Jinsong ("Luo").  (Doc. 9 at ¶¶13-14.)  BTX subsequently objected to PA's actions and informed PA that Luo was bound by a separate agreement with BTX not to provide services to BTX's customers that were similar to the services he provided to BTX.  (Doc. 9 at ¶15.)  Nevertheless, PA continued to do business with TZ and BTX's now former employee Luo, in alleged further breach of the 1997 Agreement.  (Doc. 9 at ¶17.)  PA, moreover, specifically informed BTX that it intended to continue to order and obtain goods and services from TZ with the assistance of Luo in alleged continued breach of the 1997 Agreement.  (Doc. 9 at ¶19.)

### B.    MOTION TO DISMISS

PA counters that because BTX has never given specific information as to how BTX became

---

[1]The precise contractual language states:  "For a period of 2 years after goods are last shipped under these Contract Terms, Buyer agrees not to directly or indirectly purchase from Seller's past or present suppliers or from anyone who is [sic] has been Seller's employee."

a successor-in-interest to BTE, beyond claiming that it acquired the assets of BTE, BTX's amended complaint must fail as a matter of law.  (Doc. 10 at 4.)  PA claims that such a "conclusory statement" is insufficient to establish that BTX is in fact entitled to enforce the terms of the 1997 Agreement.  (Doc. 10 at 4.)  PA claims that there must be a more definitive showing by BTX that it had in fact acquired the business rights of BTE in order to meet the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  (Doc. 10 at 8.)

So, too, PA alleges that BTX's amended complaint fails to state that BTX had materially performed its contractual obligations and was further capable of completing such obligations.  (Doc. 10 at 4.)  Essentially, PA asserts that BTX materially breached its contractual duties to PA because BTX was financially incapable of obtaining specified goods which were "already made and waiting for payment."  (Doc. 10 at 4.)  BTX's financial inability to procure said goods as specified in the contract, PA claims, precludes BTX from attempting to enforce that alleged contract.  (Doc. 10 at 4.)

## II.     LAW AND ANALYSIS

### A.     LEGAL STANDARD

A District Court may dismiss all or part of a complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) is directed solely at the complaint itself.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 1134, 155 (6th Cir. 1983) (citing *Sims v. Mercy Hosp. Of Monroe*, 451 F.2d 171, 173 (6th Cir. 1971)).  When evaluating a complaint in light of a motion to dismiss, the Court must accept all of the plaintiff's well-pled allegations as true and resolve every doubt in the plaintiff's favor.  *Zaluski v. United Am. Healthcare Corp.*, 527n F.3d 564, 570 (6th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007)).

-3-

That said, a claim will be dismissed when it does not "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 127 S. Ct. at 1969 (internal citations and quotations omitted, emphasis in original).  A court, moreover, is not required "to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868, (2009) (internal quotation marks omitted).  The complaint must also state "a plausible claim for relief" in order to survive a motion to dismiss.  *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 127 S. Ct. 1955).  The requisite facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 127 S. Ct. at 1965).

### B.    DISCUSSION

PA's motion to dismiss challenges the adequacy of BTX's claims.  The Court will address each claim in turn.

### 1.    Count I: Breach of Contract

BTX alleges that PA breached its contractual obligations with BTX (formerly BTE) on or about April 2009 by ordering and obtaining goods and services from BTX's principal supplier, TZ, in direct violation of the terms of the November 4, 1997 agreement between BTE and PA.  (Doc. 9 at 13.)  BTX further alleges that, at about the same time, PA, in further breach of the terms of the November 4, 1997 agreement, began facilitating its dealings with TZ through the assistance of BTX's China-based employee, Luo.  (Doc. 9 at 14.)  BTX specifically alleges that PA ordered and received goods from TZ on May 1, 2009; May 28, 2009; June 18, 2009; and July 11, 2009.  (Doc. 9 at 18.)  BTX reasons that the November 4, 1997 agreement prohibited these actions and, that they therefore, constitute a breach of contract on the part of PA.

-4-

In response, PA claims that, since no contractual obligations ever existed between the parties, it is not possible that PA could have breached a contract with BTX.  (Doc. 10 at 7.)  PA states that BTX has failed to adequately describe how the contractual obligations that were formed between BTE and PA in the November 4, 1997 agreement were subsequently transferred to BTX.  *(Id.* at 8.)  PA therefore alleges that BTX may not assert a breach of contract action against PA.  *(Id.)*

### a)    Breach of Contract Elements

To recover in an action for breach of contract under Ohio law, "a plaintiff must prove the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff."  *Savedoff v. Access Group, Inc.,* 524 F.3d 754 (6th Cir. 2008) (citing *Jarupan v. Hanna*, 173 Ohio App.3d 284, 294, 878 N.E.2d 66 (Ohio Ct. App. 2007) (quoting *Powell v. Grant Med. Ctr.*, 148 Ohio App.3d 1, 10, 771 N.E.2d 874 (Ohio Ct. App. 2002) (citations omitted))).[2]  PA focuses its central argument on the first element, urging the Court to find that BTX has not established the existence of any contractual obligations between BTX and PA with the requisite specificity to proceed with a claim for breach of contract.  (Doc. 10 at 8.)  Without the existence of a contract, of course, there would be no obligations between the parties and, therefore, a breach would be impossible.  *Kirkland v. St. Elizabeth Hosp. Med. Ctr.*, 34 Fed.Appx. 174, 179 (6th Cir. 2002) (holding that the failure to establish the existence of a valid contract defeats a claim for breach of contract).

---

[2]While the  November 4, 1997 agreement seems to contain a valid choice-of-law provision that would bind the parties to the laws of the District of Columbia, the parties' pre-trial pleadings and briefings assume that Ohio law will govern.  After researching the requisite elements for a breach of contract action in both the state of Ohio and the District of Columbia and finding them to be substantially similar, the Court assumes, without deciding, that the use of District of Columbia law would not alter its current analysis.  To the extent that further briefings are submitted to this Court subsequent to this opinion, parties must include a choice-of-law analysis therein.

In order to establish the existence of a contract in Ohio a party must prove three essential elements: offer, acceptance and consideration. *Bernard v. Rockwell Int'l Corp.*, 869 F.2d 928 (6th Cir. 1989) (citing *Helle v. Landmark, Inc.*, 15 Ohio App.3d 1, 8, 472 N.E.2d 765 (Ohio Ct. App. 1984)).

PA does not dispute that the November 4, 1997 agreement was a valid contract *between BTE and PA*. (Doc. 12 at 4.)[3]  In fact, PA's reply brief contains language throughout conceding that PA considers the 1997 agreement to be a valid contract.  (*Id.*) (referring to the "stated Contract Terms" contained  within the 1997 agreement).   PA argues instead that BTX has not sufficiently alleged in its amended complaint that the rights and obligations originally contained in the 1997 agreement between BTE and PA were acquired by BTX such that BTX now has the right to sue for an alleged breach of the agreement's terms.  (Doc. 10 at 7.)  PA thus urges this Court to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (Doc. 10 at 1.)

### b)    Contract Assignment

Ohio courts have long recognized the ability to assign contractual rights and obligations to parties who were not named in the original agreement. *May-Som Gulf, Inc. v. Chevron U.S.A., Inc.*,869 F.2d 917 (6th Cir. 1989); *Pilkington N. Am., Inc. v. Travelers Casualty & Surety Co.*, 112 Ohio St.3d 482, 488, 2006-Ohio-6551, 861 N.E.2d 121 (Ohio 2006) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 317 (1981)).   Under certain circumstances, however, assignment may not be permitted. *Pilkington*, 112 Ohio St.3d at 488 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 317 (1981)).  For example, if assignment is clearly prohibited by the language of the contract,   any

---

[3]PA attaches a copy of the November 4, 1997 agreement to its Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint.

-6-

attempted assignment will be unenforceable.  *Id.* (citing *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd.*, 64 Ohio St.3d 657, 665, 597 N.E.2d 1096 (Ohio 1992); *Mettler-Toledo, Inc. v. Republic Powdered Metals, Inc.*, 1996 WL 285368 (Ohio Ct. App. 1996)).  Additionally, "an assignment must not materially change the duty of the obligor, materially  increase the insurer's burden or risk under the contract, materially impair the insurer's chance of securing a return on performance, or materially reduce the contract's value." *Pilkington*, 112 Ohio St.3d at 488-89 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 317(2)(a) (1981)).  Finally, assignments that are forbidden by statute or public policy are invalid.  *Id.*  (citing RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(b) (1981)).

PA has not alleged that any of these limitations to assignment are applicable to the November 4, 1997 agreement in either their original brief or their reply brief in support of the motion to dismiss BTX's claim.  PA simply challenges the sufficiency of BTX's factual assertion that BTX is entitled to enforce any contractual rights belonging to BTE.  (Doc. 10 at 7.)  The issue then becomes whether BTX's amended complaint sufficiently alleges that they have obtained the contractual rights of BTE to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

### c)    Application of Law

A complaint need not contain "'specific facts' beyond those necessary to state [a] claim and the grounds showing entitlement to relief." *Twombly*, 127 S. Ct. at 1974 (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, 122 S. Ct. 992 (2002)).  A complaint must, however, contain sufficient facts "to state a claim to relief that is plausible on its face." *Id.*  While factual allegations put forth in a complaint must be taken as true by the court, "legal conclusions" disguised as factual allegations need not be assigned a presumption of truth. *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 127 S. Ct. at 1965 (internal citations and quotations omitted).

In its amended complaint, BTX alleges that it acquired the assets, business and contractual

-7-

rights of BTE "pursuant to an agreement dated March 2, 2007." (Doc. 9 at ¶5.)  The reference to a specific agreement between BTX and BTE effectuated on a specific date does not constitute a legal conclusion, but instead is a factual allegation put forth by the complainant.  A court is obligated to assume the truthfulness of such a factual allegation set forth in a complaint and then determine whether the allegation lends support to a plausible claim for relief.  *Iqbal*, 129 S. Ct. at 1949-50. Such a determination is to be made on a case-by-case basis and "requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

In determining whether BTX's allegation states a plausible claim for relief, the Court relies on substantial case law standing for the proposition that contract rights are assignable.  *May-Som Gulf,* 869 F.2d 917; *Am. Bonding & Trust Co. v. Baltimore & O.S.W.R. Co.,* 124 F. 866 (6th Cir. 1903) ("A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable."); *Pilkington*, 112 Ohio St.3d 482.  It is far from inconceivable that one corporate entity would assign its business rights to another corporate entity.  It is, in fact, "plausible" and PA's motion to dismiss briefing fails to direct the Court's attention to any facts that would make such an allegation otherwise.  BTX has therefore pled with sufficient specificity as required by Fed. R. Civ. P. 8 that a valid contract existed between BTX and PA based on BTE's assignment of business rights to BTX.

BTX further alleges in its amended complaint that it provided goods and services to PA in response to PA's requests under the terms of the November 4, 1997 agreement from that time until approximately April 2009. (Doc. 9 at ¶¶9-10.)  BTX has, therefore, alleged in its amended complaint a nearly twelve year period whereby both BTE and BTX performed their contractual duties pursuant to the November 4, 1997 agreement.  *(Id.)*  These allegations more than meet the specificity

standards put forth by *Twombly* and its progeny and, therefore, sufficiently allege the second element required for a breach of contract claim: performance by the plaintiff.

BTX also describes specific language in the November 4, 1997 agreement that prohibited PA from obtaining goods from any of BTE's or BTX's suppliers or employees during the term of the contract and for a period of two years thereafter.  (Doc. 9 at ¶11.)  The amended complaint goes on to allege that BTX learned in April 2009 that PA began ordering and receiving goods from BTX's principal supplier, TZ, in direct breach of the terms of the November 4, 1997 agreement.  (Doc. 9 at ¶13.)  BTX also claims that PA was facilitating its dealings with TZ through the services of BTX's employee Luo, again, in direct breach of the November 4, 1997 agreement.  (Doc. 9 at ¶14.)  BTX, moreover, points to specific dates where PA actually received goods from TZ.  (Doc. 9 at ¶18.)  BTX finally alleges that, as a result of these actions by PA, BTX has suffered money damages.  (Doc. 9 at ¶24.)  BTX has, therefore, sufficiently alleged the elements of breach by the defendant and damage to the plaintiff in its pleading to meet the standard set forth by *Twombly*.  For the foregoing reasons, PA's motion to dismiss BTX's breach of contract claim pursuant to Fed. R. Civ. P. 12(b)(6) is hereby **DENIED**.

### 2.     Count II: Tortious Interference with Contract

Count II of BTX's amended complaint alleges that PA's interactions with TZ amount to a tortious interference with a contract between BTX and TZ.  (Doc. 9 at ¶29.)  BTX further alleges that PA's dealings with Luo constitute a tortious interference with the contractual relationship between BTX and Luo.  (Doc. 9 at ¶31.)  Again, PA asserts that BTX's complaint does not sufficiently allege a tortious interference with contract claim.

### a)     Tortious Interference with Contract Elements

Under Ohio law, a plaintiff stating a claim for tortious interference with contract must

establish the existence of a contract or employment relationship, the defendant's knowledge of the contract or employment relationship, the defendant's intentional procurement of the breach of the contract or termination of the employment relationship, lack of justification, and resulting damages. *Vistein v. Am. Registry of Radiologic Technologists*, 342 F. App'x 113, 129 (6th Cir. 2004). In other words, tortious interference with contract occurs when "a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relation with another, or not to perform a contract with another." *Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999) (citing *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 651 N.E.2d 1283, 1294 (Ohio 1995)).

### b) Application of Law

BTX alleges that it established a business relationship with its principal supplier, TZ, more than a decade ago. (Doc. 9 at ¶¶6, 27.) BTX specifically claims that it has done substantial business with TZ during that time and provided assistance to TZ in adopting American business practices to further its business endeavors. (Doc. 9 at ¶6.) BTX has further alleged that Luo was a BTX employee based in China who was bound by a non-compete agreement. (Doc. 9 at ¶14.) BTX has, therefore, sufficiently put forth factual allegations in its amended complaint to establish the existence of a contractual relationship between BTX and TZ and a contractual employment relationship between BTX and Luo.

BTX must next establish that PA was aware of the alleged contractual relationships BTX had formed with TZ and Luo. *Vistein*, 342 F. App'x at 129. BTX's amended complaint satisfies this requirement by asserting that PA knew of the agreement between BTX and TZ. (Doc. 9 at ¶28.) BTX also claims that PA was aware of the employment relationship between BTX and Luo. (Doc. 9 at ¶30.) These factual allegations must be accepted as true by the Court and are, therefore,

-10-

sufficient at this stage to establish that PA was aware of BTX's  relationships with TZ and Luo. *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 127 S. Ct. at 1965) (internal citations and quotations omitted).

A plaintiff alleging tortious interference with contract must also show that the defendant intentionally brought about the breach of plaintiff's business associations with a third party. *Vistein*, 342 F. App'x at 129.  The Court finds that BTX has so alleged.  In the amended complaint, BTX claims that it first learned about PA's interactions with TZ and Luo in or about April 2009.  (Doc. 9 at ¶¶13-14.)  BTX asserts that, from November 1997 and continuing through April 2009, PA was aware of the fact that TZ was a principal supplier to BTX.  (Doc. 9 at ¶12.)  BTX claims that PA was aware that TZ's interactions with PA constituted a breach by TZ of their contract with BTX.  (Doc. 9 at ¶28.)  BTX also alleges that PA knew that Luo was bound by an agreement not to conduct business with PA. (Doc. 9 at ¶30.) Despite this knowledge, BTX claims, PA's president specifically informed BTX that PA intended to continue to conduct business with TZ while utilizing the continued assistance of Luo.  (Doc. 9 at ¶19.)  Such actions, if found to be true, clearly constitute a specific intent on the part of PA to procure the breach of the business relationships between BTX and TZ and between BTX and Luo.

### c)    **Lack of Privilege**

In Ohio, tortious interference with a contract only occurs where the defendant's actions are not privileged.  *Super Sulky*, 174 F.3d at 742 (citing *A & B-Abell*, 651 N.E.2d at 1294).  Ohio "imposes the burden of proving 'lack of privilege' or 'improper interference' on the plaintiff."  *Id.* (citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863, 866 (Ohio 1995)).

In interpreting Ohio law, the Sixth Circuit has utilized the Restatement (Second) of Torts §

-11-

767 definition of "improper interference" to determine whether a defendant's actions were privileged.  *Id.* (citing *Kand Med. v. Freund Med. Prods.*, 963 F.2d 125, 128 (6th Cir.1992)).  The Restatement (Second) of Torts § 767 proposes seven factors to be considered when determining whether conduct was privileged: (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.  *Kand*, 963 F.2d at 128 (citing RESTATEMENT (SECOND) OF TORTS § 767 (1977)).  The most important factor to be considered by a court, however, is the nature of the actor's conduct.  *Super Sulky*, 174 F.3d at 742 (citing RESTATEMENT (SECOND) OF TORTS § 767 cmt. c (1977)).

BTX specifically alleges that PA's actions are without privilege or justification.  (Doc. 9 at ¶32.)  In support of this allegation, the amended complaint asserts that PA's president, with knowledge of BTX's contractual relationships, informed BTX that PA would continue to conduct business with both TZ and Luo.  (Doc. 9 at ¶19.)  This alleged conduct by one of PA's executives is sufficient, at the pleading stage, to establish a lack of justification for PA's actions.[4]  BTX additionally claims that PA's actions have caused "substantial damages" to BTX due to the contractual breaches by TZ and Luo.

For the foregoing reasons, PA's motion to dismiss BTX's tortious interference with contract claim pursuant to Fed. R. Civ. P. 12(b)(6) is hereby **<u>DENIED</u>**.

---

[4]PA's brief in support of their motion to dismiss this action, moreover, fails to assert any justification for its conduct.  PA instead focuses its motion on its contention that there was no direct contract between BTX and PA.  As noted above, BTX has adequately alleged that such a contract did exist.

-12-

## III.  CONCLUSION

Defendant Party Animal's Motion to Dismiss (Doc. 10), as explained above, is **DENIED as to all counts**.


      **IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: April 9, 2010**

-13-